**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000990
19-OCT-2015
08:44 AM**

NO. CAAP-14-0000990

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


NORIKO ALVARADO, Plaintiff-Appellant, v.
JORGE ALVARADO IVAN, Defendant-Appellee


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 13-1-0029)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Plaintiff-Appellant Noriko Alvarado (**Noriko**) appeals from: (1) the June 25, 2014 "Decree Granting Absolute Divorce" (**Divorce Decree**); and (2) the March 14, 2015 "Order Granting Defendant's Motion to Enforce Settlement Filed on August 1, 2013" both entered in the Family Court of the Third Circuit[1] (**family court**).

On appeal, Noriko contends the family court erred in:

(1) not applying a clear and convincing standard in its Findings of Facts (**FOFs**) and Conclusions of Law (**COLs**);

(2) finding that the April 18, 2013 letter and proposed Divorce Decree was an agreement;

(3) enforcing the Divorce Decree as the terms were not sufficiently definite;

(4) failing to find the terms of the Divorce Decree unconscionable; and

---

[1]     The Honorable Lloyd Van De Car presided.

(5) failing to conclude that she involuntarily agreed to the terms of the Divorce Decree.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Noriko's appeal is without merit.

## I. Findings of Fact and Conclusions of Law

Noriko argues that the family court erred in failing to apply a "clear and convincing evidence" standard. Noriko supports this claim by pointing to the lack of an explicit statement of what standard the family court applied to its FOFs.

Noriko cites no authority to support the application of a heightened standard of proof to this case. It is well established that civil cases, even in family court, must generally be proven by a preponderance of the evidence. See Territory v. Good, 27 Haw. 8, 9-11 (Haw. Terr. 1923) (finding a preponderance of the evidence standard applies to paternity cases because they are civil in nature); see also Nishihara v. Nishihara, 22 Haw. 189, 195 (Haw. Terr. 1914) (applying a preponderance of the evidence standard to a divorce proceeding); cf. In re Doe, 95 Hawai'i 183, 191-92, 20 P.3d 616, 624-25 (2001) (holding cases involving a divestment of parental rights use a "clear and convincing" standard of proof). Therefore, Noriko's argument is without merit, and the family court did not err.

## II. April 18, 2013 Letter and Settlement Agreement

Noriko argues that the family court erred in finding the April 18, 2013 letter and settlement offer constituted an agreement. Noriko's argument on appeal is that the Divorce Decree is not enforceable because her counsel did not have the authority to enter into a settlement agreement on her behalf. There is no indication in the briefs or record that Noriko raised this issue to the family court. Therefore, she has not properly preserved this issue for appeal. State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed

to have been waived on appeal; this rule applies in both criminal and civil cases."); Craft v. Peebles, 78 Hawai'i 287, 294, 893 P.2d 138, 145 (1995) ("It is well settled that objections not raised or properly preserved at trial will not be considered on appeal.").

Furthermore, the family court's findings regarding the agreement were supported by substantial evidence. The record reveals that on April 15, 2013, counsel for Defendant-Appellee Jorge Alvarado Ivan (**Jorge**) sent a letter to counsel for Noriko indicating that Jorge and Noriko had orally agreed to Noriko's acceptance of $30,000 in lieu of half of the proceeds from the sale of the Kahala Street property. On April 18, 2013, counsel for Noriko responded in a letter stating, "I have been in contact with my client, and I believe that this is the agreement the parties have reached, and I have included it in the current Offer of Settlement which is enclosed." This court cannot conclude that the family court's findings regarding the April 18, 2013 letter and settlement offer were clearly erroneous. Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012).

III. Terms of the Divorce Decree

A. Definite Terms

Noriko argues that the family court erred in enforcing the Divorce Decree because the terms of the agreement were not sufficiently definite. Noriko contends the inconsistency between Jorge's declaration and his trial testimony amount to indefinite terms. Jorge's declaration attached to the August 1, 2013 "Motion to Enforce Settlement" states, "After reviewing the April 8, 2013 proposal with my attorney, [Noriko] contacted me and said that in addition to the proposed terms in the April 8, 2013, letter, she wanted a payment of $30,000. I agreed with this revision." Jorge's trial testimony, however, suggested that his understanding of the payment was that it was Noriko's total payment for the Kahala property, not in addition to half of the sale proceeds of the Kahala property.

Noriko's testimony at the hearing on Jorge's "Motion to Enforce Settlement," however, was consistent throughout the

3

record. Noriko agreed to receiving $30,000 for the Kahala property instead of splitting the proceeds with Jorge. The correspondence from Noriko's attorney to Jorge's attorney also reflects Noriko's understanding that the $30,000 payment was in lieu of half of the proceeds from the sale of the Kahala property. Noriko challenged the validity of the agreement only when she found out the money did not come from Jorge's boss, but instead came from the sale of the house.

As to the definiteness of the terms, there is no question of fact that a mutual, valid, and enforceable settlement agreement existed between Noriko and Jorge. <u>Moran v. Guerreiro</u>, 97 Hawai'i 354, 371, 37 P.3d 603, 620 (2001).

### B. Unconscionability

Noriko contends the family court erred in failing to conclude that the terms of the Divorce Decree were unconscionable.

"[T]he family court must enforce all valid and enforceable postmarital and separation agreements. . . . A postmarital or separation agreement is enforceable if the agreement is <u>not unconscionable</u> and has been <u>voluntarily</u> entered into by the parties with the knowledge of the financial situation of the other spouse." <u>Balogh v. Balogh</u>, 134 Hawai'i 29, 40, 332 P.3d 631, 642 (2014) (citations, internal quotation marks, and brackets omitted).

> Unconscionability encompasses two principles: one-sidedness and unfair surprise. One-sidedness (i.e., substantive unconscionability) means that the agreement leaves a post-divorce economic situation that is unjustly disproportionate. Unfair surprise (i.e., procedural unconscionability) means that one party did not have full and adequate knowledge of the other party's financial condition when the marital agreement was executed. A contract that is merely inequitable is not unenforceable. The unconscionability of an agreement regarding the division of property is evaluated at the time the agreement was executed.

<u>Id.</u> at 41, 332 P.3d at 643 (citations, internal quotation marks, and brackets omitted).

4

### 1. Source of $30,000

The settlement agreement drafted by Noriko's counsel and signed by Jorge states: "C. Once [Jorge] has paid to [Noriko] and [sic] equalizing payment of $30,000, the following property will be awarded to [Jorge] as his sole and separate property, along with any associated debt or mortgage thereon: 15-2825 Kahala St., Pahoa."

Noriko argues that the settlement agreement was procedurally unconscionable because she believed the $30,000 was a loan from Jorge's boss, not from the sale of the Kahala property. Noriko does not contend that she was unaware of Jorge's financial condition when the settlement agreement was reached. In fact, the record indicates it was Noriko, not Jorge, who had not disclosed all of her assets in her Asset and Debt Statement. Jorge's Asset and Debt Statement included the Kahala property, which he "owned free and clear." That Jorge paid Noriko $30,000 from the sale of property he owned and listed in his Asset and Debt Statement rather than from money he borrowed from his boss did not cause Noriko to be unaware of Jorge's financial condition such that the agreement was procedurally unconscionable. Therefore, the family court's conclusion was not in error. Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705.

### 2. Signatures of Both Parties

Noriko argues the settlement agreement is unconscionable because it was not signed by both parties. Noriko does not cite any authority requiring a postmarital agreement to be signed by both parties.[2] Noriko does not otherwise explain how her lack of signature could render the agreement unconscionable. Without more, this court cannot conclude that the family court had erred. Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705.

---

[2] Noriko cites a case from a foreign jurisdiction holding that postnuptual agreements fall within the Statute of Frauds. Hawaiʻi's Statute of Frauds requires "agreement[s] made in consideration of marriage" to be signed by the party to be charged. Hawaii Revised Statutes § 656-1 (1993). Unlike prenuptial agreements, divorce agreements are not made "in consideration" of marriage and do not fall within the Statute of Frauds.

### 3. Principles of Equal Division of Marital Property

Noriko argues that the exchange of $30,000 for the property was an unequal division of the Kahala property, and that the division was one-sided. The settlement agreement awarded the parties the following:

> 10. Vehicles.
>
> A. [Noriko] is awarded the 2006 Chevy and the 2003 Mazda MPV, along with any associated debt thereon.
>
> B. [Jorge] is awarded the Ford truck, his Mazda, year unknown, and the fishing boat and trailer, along with any associated debts thereon.
>
> C. Each party shall cooperate and sign over ownership of any vehicles in his or her name that has been awarded to the other party. If a party shall fail to do so within 30 days of the signing and filing of this Decree, then the Chief Court Administrator is authorized to sign on behalf of the non-performing party to effectuate the terms of this Decree.
>
> 11[.] Real Property.
>
> A. The following properties are awarded to [Jorge] along with any associated debt or mortgage thereon:
>
> > i) 15-2927 Mahimahi St., Pahoa
> >
> > ii) Kawakawa St. property, Pahoa
>
> B. The following properties are awarded to [Noriko], along with any associated debt or mortgage thereon:
>
> > i) 15-2817 Maiko Place, Pahoa
> >
> > ii) Mikihala St. property, Pahoa
> >
> > iii) 15-2813 Kahala St., Pahoa
>
> C. Once [Jorge] has paid to [Noriko] and [sic] equalizing payment of $30,000, the following property will be awarded to [Jorge] as his sole and separate property, along with any associated debt or mortgage thereon:
>
> 15-2825 Kahala St., Pahoa

The division of the marital assets as stated in the settlement agreement does not appear to be so one-sided as to render the agreement unconscionable. Noriko has not provided any substantive evidence on appeal to show that the division was unjustly disproportionate. Furthermore, a contract that is

6

inequitable is not necessarily unenforceable. Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643. Therefore, the family court's conclusion was not in error. Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705.

## IV. Involuntary Agreement to Divorce Decree

Noriko asserts the family court erred in failing to conclude that she involuntarily agreed to the terms of the Divorce Decree. It seems Noriko's argument on appeal is that Jorge unduly influenced Noriko's acceptance of the $30,000.

In its COL, the family court stated:

> 13. Neither has [Noriko] established that the agreement she proposed was involuntarily made. She testified that she instructed her attorney to propose the decree that [Jorge] signed because [Jorge] threatened to go after her assets in Japan. In a divorce, each party is entitled to seek an interest in the assets held by the other. Whether any portion of [Noriko's] Japan assets would have been awarded to [Jorge] in the divorce is uncertain. But it is neither illegal nor immoral for [Jorge] to pursue those assets in this action.

"Involuntariness is shown by evidence of duress, coercion, undue influence, or any other circumstance indicating a lack of free will or voluntariness." Balogh, 134 Hawaiʻi at 43, 332 P.3d at 645. (internal quotation marks omitted) (citing Chen v. Hoeflinger, 127 Hawaiʻi 346, 357, 279 P.3d 11, 22 (App. 2012)). "Undue influence is the improper use of power or trust in a way that deprives a person of free will and substitute's another's objective." Balogh, 134 Hawaiʻi at 45, 332 P.3d at 647 (internal quotation marks and brackets omitted) (citing Black's Law Dictionary 1760 (10th ed. 2014); Cvitanovich-Dubie v. Dubie, 125 Hawaiʻi 128, 160, 254 P.3d 439, 471 (2011)).

On appeal, Noriko lists a number of facts to suggest the agreement was involuntary: (1) Jorge falsely represented that he was not going to sell the Kahala property; (2) Noriko believed the $30,000 was from Jorge's boss and not from the sale of the Kahala property; (3) Jorge came to Noriko's house each day for ten days to ask her to accept the $30,000; and (4) Noriko's first language is not English. None of these facts suggest that Noriko was deprived of her free will through Jorge's improper use of power or trust. Balogh, 134 Hawaiʻi at 45, 332 P.3d at 647. The

7

family court did not err in concluding that the agreement was not involuntary.  <u>Kakinami</u>, 127 Hawai'i at 136, 276 P.3d at 705.

Therefore,

IT IS HEREBY ORDERED that (1) the June 25, 2014 "Decree Granting Absolute Divorce"; and (2) the March 14, 2015 "Order Granting Defendant's Motion to Enforce Settlement Filed on August 1, 2013," both entered in the Family Court of the Third Circuit are affirmed.

DATED:  Honolulu, Hawai'i, October 19, 2015.

On the briefs:

Junsuke Otsuka
(Otsuka & Associates)
for Plaintiff-Appellant.

Charles H. Hite
(Nakamoto, Okamoto, and
Yamamoto of counsel)
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

8